UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| ATRIENT, INC., | Case No. 2:17-CV-2880 JCM (GWF) |
|---|---|
| Plaintiff(s), | ORDER |
| v. | |
| WENDY PEREZ, | |
| Defendant(s). | |

Presently before the court is plaintiff Atrient, Inc.'s ("Atrient") motion for preliminary injunction. (ECF No. 9).[1] Defendant Wendy Perez ("Perez") filed a response (ECF No. 14), to which Atrient replied (ECF No. 15).

**I.  Facts**

Atrient is a gaming information technology company. (ECF No. 9). Atrient provides custom developed software solutions for gaming operators and holds millions of dollars in business contracts. (*Id.*). Atrient has a duty to protect gaming, client, and patron information in accordance with regulatory requirements as well as client contracts. (*Id.*).

On or about October 20, 2016, Atrient hired Perez as a Senior Account Executive. (*Id.*). Atrient alleges that pursuant to Perez's offer letter, and as a condition of her employment, she was to sign a separate at-will employment, non-competition, confidential information and invention assignment agreement ("NDA") that required non-disclosure of propriety information. (*Id.*). While Perez began working at Atrient, she never executed the separate NDA. (*Id.*).

---

[1] Pursuant to Local Rule IC 2-2(b), a separate document must be filed on the docket for each purpose. Atrient filed the instant motion as a motion for preliminary injunction and the court will construe it as such. The court cannot consider Atrient's request for expedited discovery unless it is filed separately.

**James C. Mahan**
**U.S. District Judge**

After a few months of employment, Atrient alleges Perez's work performance began to decline. (*Id.*). In May 2017, Atrient informed Perez of her performance issues and designed a performance improvement plan ("PIP"). (*Id.*). Atrient alleges Perez refused to sign the PIP and thereafter accused Atrient of harassment. (*Id.*). Perez then filed a formal harassment complaint with the Nevada Equal Rights Commission. (*Id.*). Perez contends the PIP was presented to her as retaliation, only after Atrient learned of her internal harassment complaints against her supervisor. (ECF No. 14). Further, Perez contends she refused to sign the PIP because she was performing her job as expected. (*Id.*).

Despite several efforts by Atrient, Perez continued to refuse to sign the NDA. (ECF No. 9). On or about November 10, 2017, each employee of Atrient with access to confidential and proprietary information was required to sign a new NDA. (*Id.*). At this time, Atrient alleges Perez was again presented with the NDA, but refused to sign it. (*Id.*). Perez contends Atrient's inability to provide an executed NDA from when she was initially hired is Atrient's fault. (ECF No. 14). Perez claims she subsequently refused to sign an NDA because she felt Atrient was pressuring her to do so in anticipation of her termination. (*Id.*).

On or about November 13, 2017, Perez searched for the Atrient Internet Protocol address ("IP address") while at work, using a work computer. (ECF No. 9). Atrient alleges that Perez conspired with unknown defendants who helped her access the IP address. (*Id.*). Further, Atrient claims Perez then provided the IP address and computer count on the Atrient network to these unknown defendants. (*Id.*). Atrient terminated Perez soon after learning she had accessed the company's IP address. (*Id.*).

An IP address is assigned to a network or a computer and provides a unique identification of each user of the internet. (*Id.*). An IP address allows for access out to the internet as well as access back to the computer or network. (*Id.*). Atrient contends that Perez's search for the IP address had no business purpose. (*Id.*). Atrient further contends that it is well known that when a party intends to do harm to the network of a business, the way to access the network is through the business's IP address. (*Id.*). Atrient thus concludes that "Perez's conduct of searching for Atrient's IP address and likely relating to John Doe is for nothing other than an unlawful purpose." (*Id.*).

Perez admits to searching for the IP address, but contends it was because she "was concerned that her privacy was being invaded by her harasser who was seemingly monitoring her movements, outside of the office environment, with some sort of tracking device on her work phone because [her harasser] would contact her and cryptically suggest knowing where she was." (ECF No. 14). She claims she googled "what is my IP address" so as to compare what came up in her search with the supposed suspicious activity on her phone and computer. (*Id.*). Perez claims she "was unaware of what the [IP address] was and how it could be used." (*Id.*). She further denies she conducted the search in furtherance of causing harm to Atrient or conspired with anyone to do so. (*Id.*).

Perez alleges that Atrient could easily prevent any potential harm by having its IT department change the IP address. (*Id.*). Accordingly, a preliminary injunction is not necessary. (*Id.*).

In the instant motion, Atrient requests that the court grant a preliminary injunction because "Perez is in possession of confidential and sensitive Atrient information . . . ." and "should immediately be restrained from conduct that not only threatens Atrient, but Atrient's duties and obligations to its clients." (ECF No. 9). Perez alleges that Atrient has failed to satisfy the irreparable harm and success on the merits elements required in order to issue a preliminary injunction. (ECF No. 14).

**II. Legal Standard**

Federal Rule of Civil Procedure 65 provides that the court may issue a preliminary injunction on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). A preliminary injunction seeks to preserve the status quo and prevent irreparable harm from occurring before a judgment is issued. *Textile Unlimited Inc. v. BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001).

The Supreme Court has stated that courts must consider the following elements in determining whether to issue a preliminary injunction: (1) likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008). The test is conjunctive, meaning the party seeking the injunction must satisfy each element.

Additionally, post-*Winter*, the Ninth Circuit has maintained its serious question and sliding scale tests. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.*

"Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

### III. Discussion

Plaintiffs seeking a preliminary injunction have a burden to satisfy each of the four elements above. *See Winter*, 555 U.S. at 20. In the instant motion, Atrient dedicates four pages to their legal argument and analysis. (ECF No. 9, 6-10). Besides its analysis of 'success on the merits,' Atrient merely restates the other three elements while providing little support as to how each has been satisfied. (*Id.*). Because Atrient has failed to adequately show it will suffer irreparable harm, it is not necessary for the court to address each element in turn to determine whether Atrient's claim for a preliminary injunction has merit.[2] Accordingly, the court will only address the irreparable harm element of Atrient's preliminary injunction motion.

#### A. *Likelihood of irreparable injury*

Before a preliminary injunction may be issued, the seeking party must show that he will suffer an irreparable injury and otherwise lacks an adequate remedy at law to prevent such injury. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

The mere "possibility" of irreparable harm is not enough to justify a preliminary injunction. *Winter*, 555 U.S. at 22.

---

[2] While the court recognizes the balancing test applied by the Ninth Circuit as to the four elements of a preliminary injunction, because Atrient's showing of irreparable harm is so inadequate, even a stronger showing by Atrient as to one of the other elements will be insufficient to salvage Atrient's motion for preliminary injunction. *See Cottrell*, 632 F.3d at 1131.

**James C. Mahan**
**U.S. District Judge**

- 4 -

As the Supreme Court made clear in *Winter*, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the [seeking party] is entitled to such relief." *Id.*; *see also Alliance for the Wild Rockies*, 632 F.3d at 1131 ("Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.") (emphasis omitted). The threat of irreparable harm must also be "immediate" to warrant preliminary injunctive relief. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Atrient alleges that Perez accessed the company's IP address for sinister purposes and did so with the assistance of unknown conspirators. (ECF No. 9). Atrient further alleges that Perez "likely" disclosed the IP address to these unknown defendants, thus threatening Atrient and its client's proprietary information. (*Id.*). Conversely, Perez contends her search for Atrient's IP address was connected to the harassment she allegedly suffered at the hands of her supervisor, that she conducted the search alone, and that she had no unlawful or malicious intentions in conducting the search. (ECF No. 14).

Atrient's motion for preliminary injunction provides no support for its claim that Perez worked with, or disclosed the company's IP address to anyone inside or outside the company. As Perez's response aptly points out, Atrient's contentions that Perez disclosed the company's IP address are purely speculative. (ECF No. 14) ("Perez . . . . *likely* communicated the public facing IP address . . . ." (ECF No. 9 at 2); "*If* the information was sent to Defendants Doe and/or Roe *or* is successfully leveraged . . . ." (ECF No. 9 at 2).

While Perez admits to searching for the IP address, Atrient's claims that she did so with malice and then disclosed it to unknown defendants are based on nothing more than belief. Atrient offers no evidence that Perez ever communicated with anyone regarding the company's IP address nor that any of Atrient's proprietary or confidential information has been accessed. Instead, Atrient's motion merely concludes that Perez has done so. The court is unwilling to merely rely on Atrient's self-serving and conclusory statements. Atrient claims it "will suffer immediate and irreparable harm because Perez, and Doe and Roe Defendants, have access to its entire business

model and has [sic] utilized Company information for unknown personal use. . . ." (ECF No. 9 at 9), but Atrient's motion in fact admits it has no idea if Perez had help from anyone in accessing the IP address or ever disclosed it. (*Id.* at 2). Further, Atrient has failed to show Perez possesses the knowledge or capability to use the company's IP address to threaten or harm the company.

Atrient further contends that Perez's harassment allegations against her supervisor amount to a desire, on Perez's part, to damage the company. (*Id.*). Citing a Ninth Circuit case, Atrient states that the threat of being driven out of business is sufficient to establish irreparable harm. *See Am. Passage Media Corp. v. Cass Communications, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985). While the court does not question the holding in *Cass Communications, Inc.*, it has a hard time believing that one employee's sexual harassment claim, legitimate or not, could rise to the level of threatening the existence of the company.

Citing another Ninth Circuit decision, Atrient states that evidence of threatened loss of prospective customers or good will supports a finding of the possibility of irreparable harm. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001). This "possibility" of irreparable harm standard as applied in *Stuhlberg* was explicitly overruled by the Supreme Court in *Winter*. To establish irreparable harm under this line of reasoning, Atrient must show that absent injunctive relief, it would likely suffer the loss of prospective customers or good will. Instead, Atrient offers one sentence that merely repeats the Ninth Circuit's overruled holding in *Stuhlberg*. Therefore, Atrient has not established a likelihood of irreparable injury if preliminary relief is not granted as required under *Winter*.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for preliminary injunction (ECF No. 9) be, and the same hereby is, DENIED.

. . .

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 6 -

IT IS FURTHER ORDERED that Atrient's request for expedited discovery is DENIED without prejudice because Atrient improperly filed it within the same document as its motion for preliminary injunction. If desired, Atrient must file its request for expedited discovery as a separate, independent document, as required by LR IC 2-2(b).

DATED January 18, 2018.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**